Argued and submitted June 1, affirmed on appeal; remanded with instructions on
cross-appeal August 3, petition for review denied December 13, 1994
(320 Or 453)

Leon L. WHISTLER, Jr.,
and Jan D. Whistler,
husband and wife,
*Respondents - Cross-Appellants,*

*v.*

Glen HYDER
and Evelyn Hyder, husband and wife,
Tod F. Brostrom and Kathie A. Brostrom,
husband and wife, Alice Roberts, David Dixon,
Ron Bentz Realty, George Gershbacher and
Virgil's Termite & Pest Control,
*Defendants,*

*and*

Tom MUNSON,
*Appellant - Cross-Respondent.*

(92-0701; CA A80214)

879 P2d 214

Keith L. Hayes filed the briefs for appellant - cross-respondent.

Dwight P. Billman argued the cause and filed the briefs for respondents - cross-appellants.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendant Munson[1] appeals from a declaratory judgment in favor of plaintiffs that set aside defendant's declaration of forfeiture and reinstated the parties' land sale contract. Plaintiffs cross-appeal, assigning error to the trial court's finding that they were in default under the land sale contract and to the award of attorney fees and costs to defendant. We review *de novo*. ORS 19.125(3); *see also U.S. Nat'l Bank v. Caldwell*, 60 Or App 639, 641, 655 P2d 180 (1982), *rev den* 294 Or 536 (1983). Because we hold that the trial court erred in finding that plaintiffs were in default under the terms of the land sale contract, we affirm on the appeal and reverse on the cross-appeal.

In January, 1990, plaintiffs entered into a land sale contract with Tod and Kathie Brostrom for the purchase of approximately 76 acres of land on which there was a house, three ponds and a dam. The agreement provides that "purchaser takes the property and the improvements thereon in the condition existing at the time of this agreement, and in their present condition, 'AS IS.' " Sometime after the purchase, the Brostrom's assigned their seller's interest to David Dixon. On December 30, 1991, Dixon's attorney wrote a letter to plaintiffs notifying them that Dixon considered them to be in breach of the contract, because allegedly, they had failed to make timely installment payments, they had failed to make the tax payments when due, they had failed to provide proof of insurance, they had failed to maintain the dam in proper condition by allowing the spillway to become overgrown, and they had failed to maintain the house in good condition by not correcting a pest infestation. Plaintiffs denied that they were in breach of the contract.

In January, 1992, Dixon's attorney notified plaintiffs that they were in default, because they had failed to correct the problems that were referred to in his earlier letter, and that he was initiating forfeiture proceedings. He attached a copy of a notice of default, which he had filed with the county clerk on January 31, 1992. *See* ORS 93.910; ORS 93.915. The

---

[1] Plaintiffs also named other defendants in their complaint. However, those claims were bifurcated, and a final judgment was entered against defendant Munson pursuant to ORCP 67B.

notice said that plaintiffs were in default in the particulars mentioned in the first letter, with the exception of the allegation that plaintiffs had failed to make timely installment payments. The notice gave plaintiffs 60 days to cure the defaults. Sometime after the notice was filed, Dixon assigned his interest in the property to defendant. On February 19, 1992, plaintiffs' attorney wrote a letter to Dixon's attorney, stating that all of the taxes had been paid and that the damage to the dam was caused by and would be fixed by the Water District. Attached to the letter was proof of insurance.

On May 8, 1992, defendant filed with the clerk and served on plaintiffs a declaration of forfeiture pursuant to ORS 93.930. It averred that plaintiffs had failed to cure the defaults relating to the maintenance of the dam and the house. Shortly thereafter, plaintiffs filed the complaint in this case, seeking a declaratory judgment that they were not in default. They sought injunctive relief to prevent defendant from taking any further action pursuant to the declaration of forfeiture. The matter went to trial, and the trial court found that plaintiffs were in default regarding their obligation to maintain the dam and the house, because they had not completed the repairs to those improvements within 60 days of the notice of default. However, the court also found that no waste to the premises had occurred. It held that the 60-day time period in which to cure the defaults was unreasonable because of the nature and extent of the required repairs. It concluded:

> "[I]t is equitable and not contrary to the purposes of ORS 93.905 to 93.940, to declare that the rights of the Plaintiffs under the contract are not forfeited by the declaration of forfeiture made by Defendant Munson. This Court further concludes however, that Plaintiffs shall pay the costs and expenses, including limited attorney fees, as provided by ORS 93.920."

On appeal, defendant argues that the trial court did not have the statutory authority to refuse to enforce the declaration of forfeiture in the light of its finding that plaintiffs were in default. The predicate to defendant's argument is that plaintiffs were in default and, therefore, we address plaintiffs' cross-appeal first. Plaintiffs argue that, because the court found that no waste had been committed on the property, it wrongfully concluded that plaintiffs were in

default and erred in awarding attorney fees and costs to defendant.

The contract provides, in pertinent part:

"Commencing with the possession date and thereafter at all times during the term of this contract, [plaintiffs] shall[,] with respect to the property[,] do the following:

"1. *Keep all improvements* now existing or which shall hereafter be placed on the property *in good condition and repair and not permit any waste or removal thereof.*

"* * * * *

"Time is of the essence of this contract. A default shall occur if:

"1. [Plaintiffs fail] to make any payment within 30 days after it is due; but [defendant] shall not be obligated to give notice to [plaintiffs] to constitute a default under this subparagraph, or

"2. [Plaintiffs fail] to perform any other obligation imposed by this contract and [do] not correct or commence correction of such failure within 30 days after receipt of written notice from [defendant] specifying the manner in which [plaintiffs are] in default." (Emphasis supplied.)

The provisions in the contract about maintaining the condition of the improvements are in the conjunctive. The first requirement is that plaintiffs keep all improvements existing at the time of the contract "in good condition and repair." The second provision requires plaintiffs not to permit any waste or removal of the improvements. It is apparent from the context of the language that the provisions are intended to maintain the condition of the improvements so that defendant will be restored to property that has retained its value in the event of a forfeiture. The law imposes a duty of good faith and fair dealing in contracts to facilitate performance and enforcement in a manner that is consistent with the terms of the contract and that effectuates the reasonable contractual expectations of the parties. *See Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 876 P2d 761 (1994); *Sheets v. Knight*, 308 Or 220, 233, 779 P2d 1000 (1989). That implied duty is part of the requirement that plaintiffs keep the improvements in good condition.

■ The second provision requires that plaintiffs prevent waste from occurring. Waste occurs when the person in possession of the land, by act or omission, causes the property's value to decrease as the result of abuse or destruction, thereby causing injury to the property and the holders of the legal interests in it. *In re Stout's Estate*, 151 Or 411, 422, 50 P2d 768 (1935). In the light of the language of the contract, we turn to the facts of this case to determine whether a default occurred because plaintiffs failed to maintain the dam and the house in good condition or allowed waste to occur.

■ Jan Whistler testified that, sometime in the middle of the winter of 1991,

> "when it was requested that the spillway be properly maintained, I went out there * * * and chopped blackberries and dug out the spillway so that more water could be let out."

She testified that any additional repair work could not be done until the spring or summer when the ground was dry enough to allow heavy equipment to be brought onto the property to repack the dam. Those repairs were in fact done in June, 1992. The trial court opined:

> "7) Although repair of the erosion of the damage was not completed until about 60 days after the declaration of forfeiture, the repair was reasonably and necessarily delayed by the wet condition of the ground around the dam and the need to use heavy equipment to make the repairs.
>
> "8) No waste to the premises occurred except the temporary erosion of the dam wall, and upon completion of the repairs to the spillway drain and the dam wall the premises were improved as compared to their condition at the time of the sale by contract."

We agree with the trial court's appraisal of the evidence and its legal conclusions. From the terms of the contract, we hold that it is not a reasonable expectation that the contract requires plaintiffs to do more repairs at the time of the notice than were reasonably feasible.[2] The covenant of good faith and fair dealing precludes the contrary conclusion.

---

[2] *See, e.g., Teel v. Steinbach Estate et al.*, 135 Or 501, 296 P 1069 (1931) (the tenant could expect the landlord to make only such repairs as would reasonably be made to an old building); *Ball v. Day*, 57 Or App 384, 644 P2d 649 (1982) (although the landlord assumed the duty to make extraordinary repairs, the landlord had no obligation to repair conditions caused by the tenant's faulty installation).

Furthermore, plaintiffs were required only to commence repairs within 30 days of being notified by defendant of the reason that they were allegedly in default. Under the circumstances, plaintiffs were not in default for failure to finish repairing the dam and the spillway within the 30-day period of time prescribed by the contract.

We turn to the claim that plaintiffs were in default because of the pest infestation. There is no persuasive evidence that plaintiffs took any remedial measures concerning the pest infestation problem within 30 days of the notice. Although plaintiffs' attorney claimed in his letter to Dixon's attorney that "the premises have been sprayed and some repair has been done," we are unable to find any testimony in the record as to when plaintiffs undertook such actions. Nonetheless, the trial court found:

"1) The premises were infested by such pests at the time of the purchase, contrary to the representation in the inspection report provided at request of purchasers. The report discloses that debris was under the house. An inspection more that [*sic*] a year later showed that the debris obstructed inspection of the infested portion of the premises.

"* * * * *

"3) Although the treatment of the infestation was not completed within 60 days after the notice of default, the treatment of the infestation was completed to a condition better than at the time of the purchase by the contract when the declaration of forfeiture was filed on May 8, 1992.

"4) In addition to treatment of the infestation, repairs had been made to the structure which enhanced the value of the residence at least to the value of the costs of such repairs."

Again, we agree with the trial court's conclusions. The effect of the provision that plaintiffs maintain the property in good condition and repair is to require them to maintain the property in the condition as it existed when they purchased the property in January, 1990. The contract does not require them to improve the premises. The purchase agreement says that plaintiffs bought the house "AS IS." Witnesses who examined the house opined that the pest infestation preceded plaintiffs' purchase and they could not determine the extent, if any, to which the infestation had

increased in severity after the date of purchase. In the light of that testimony, plaintiffs could not be held in default for failure to undertake control measures of a condition that preexisted the purchase.

Plaintiffs also argue on cross-appeal that the trial court erred in awarding attorney fees and costs to defendant pursuant to ORS 93.920.[3] Because we reverse the trial court's conclusion that plaintiffs were in default, it was error to award attorney fees and costs to defendant. Also, as a result of our finding that plaintiffs were not in default, we reject defendant's argument on appeal.

Affirmed on appeal; on cross-appeal, remanded for entry of amended judgment deleting award of attorney fees and costs to defendant.

---

[3] ORS 93.920 provides, in part:

"In addition to paying the sums or tendering the performance necessary to cure the default, the person effecting the cure of the default shall pay all costs and expenses actually incurred in enforcing the contract, including, but not limited to, late charges, attorney fees not to exceed $350 and costs of title search."