Argued and submitted July 19, affirmed October 13, 2004

John J. SCHLABACH et al,
Trustees of Myrtle Lane Properties,
*Appellants,*

*v.*

Ronald R. TOLLENAAR, Jr.,
and Henrilee L. Tollenaar,
*Respondents,*
*and*

Greg MEADOR,
dba Burger Barn,
*Defendant.*

02CV0195; A122501

98 P3d 1154

David S. Tilton argued the cause and filed the briefs for appellants.

George W. Kelly argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Plaintiffs appeal from an adverse judgment in this action for breach of a commercial lease and waste. Plaintiffs assert that a letter opinion that the trial court issued before entering judgment shows that it analyzed the claims incorrectly and therefore erred in entering judgment.[1] We affirm.

Plaintiffs, as landlord, and defendants, as tenants, were parties to a commercial lease that was annually renewed from 1988 until 2002. The lease required defendants to repair and maintain the demised premises, which included a restaurant and parking lot. The lease provided:

"Lessee agrees that in case the Lessor by reason of the failure of the Lessee to perform any agreement herein, shall be compelled to pay any sums of money which should have been paid by the Lessee, then the sums so paid together with interest thereon at the rate of 10% per annum, costs and damages, shall be added to the installment of rent next due in the same manner and with the same remedies as if it had been originally reserved."

The lease also provided, among other things, that the remedies under it were cumulative and that defendants' liability to plaintiffs for damages would survive termination of the lease.

Defendants' business suffered financial distress and, toward the end of the tenancy, the parties had extensive discussions about defendants' nonpayment of rent and plaintiffs' assertion that defendants had failed to maintain the premises in the condition required by the lease. In 2000, plaintiffs' insurer requested that the parking lot be repaired. Defendants filled potholes in the parking lot with gravel. Not satisfied, plaintiffs hired a contractor to resurface the lot at a cost of $11,000. Plaintiffs did not immediately demand reimbursement of that sum from defendants, nor did plaintiffs insist that it be added to "next due" rent installments as permitted by the lease.

---

[1] Plaintiffs' amended complaint included additional claims that do not require discussion on appeal. Defendants filed an answer that included a counterclaim for conversion of personal property. The trial court awarded defendants damages on the counterclaim. In their third assignment of error, plaintiffs challenge that award. We reject plaintiffs' third assignment of error without discussion.

Between October 2001 and January 2002, plaintiffs' manager and defendants had numerous contacts about the condition of the premises. In those contacts, defendants informed plaintiffs that the condition of the premises was deteriorating and, in particular, that roof and sewer repairs were required. Defendants told plaintiffs that, because of financial difficulties, defendants were unable to perform the repairs. Neither plaintiffs nor defendants performed the repairs during that period. In January 2002, defendants closed their business and terminated the lease. When plaintiffs regained possession of the premises, there was extensive water damage related primarily to the roof and sewer problems. Plaintiffs obtained an estimate that the total cost of repairs and cleanup of the premises would be $12,999.81.

In May 2002, plaintiffs commenced this action, seeking, among other relief, recovery of $11,000 for the parking lot repairs in a breach of lease claim and $12,999.81 for roof and sewer repairs and cleanup costs in a waste claim under ORS 105.805. The parties waived a jury trial, and the case was tried to the court. In August 2003, the court issued a letter opinion addressing each of the parties' claims. In the letter opinion, the court ruled in favor of defendants on the breach of lease claim and in favor of plaintiffs on the waste claim. The court awarded plaintiffs $1,100 in damages for cleanup costs. In September 2003, the court entered a judgment that adjudicated the parties' claims consistently with the letter opinion and incorporated the letter opinion by reference.

■ In the first assignment of error, plaintiffs assert that the trial court's letter opinion demonstrates that it erroneously resolved plaintiffs' breach of lease claim for the parking lot repair expense by concluding that plaintiffs' failure to add the expense to the next accruing rent installment as permitted by the lease resulted in a waiver of plaintiffs' right to seek reimbursement for that expense in an action for damages after the lease terminated.

We view the trial court's letter opinion differently.[2] Although the trial court did, as plaintiffs assert, ascribe significance to plaintiffs' failure to add the parking lot repair

---

[2] The issue of the legal significance of a letter opinion in an action tried to the court has presented recurring challenges for appellate courts. *See, e.g., Wilson v.*

expense to defendants' monthly rent payments, the court found as fact, rather than concluded as a matter of law, that plaintiffs intended to perform the repairs at their own expense and not seek reimbursement from defendants. In particular, the court stated:

> "These discussions about the parking lot occurred during the same time period that the defendants were experiencing business difficulties and had begun looking for an alternative site for their business. At a time when the parties had agreed to reduce the rent, due to the defendants' arrearages, and plaintiff had been put on notice that the defendants were considering a move if business did not improve, [plaintiffs' manager] arranged and plaintiff[s] paid for repair of the parking lot.

> "The contractor's estimate to patch holes was $3,500; however, he recommended a complete overlay to extend the life of the parking lot. * * *

> "There was no evidence that [plaintiffs' manager] consulted with the defendants before ordering the work to be done, nor is there any evidence that plaintiff[s] at any time demanded reimbursement by the defendants prior to the filing of this lawsuit."

The trial court then characterized the expense as an "economic incentive" that plaintiffs performed at plaintiffs' own cost, rather than an expense incurred with the expectation that defendants would repay it. It was in that context that the court discussed the lease provision that authorized plaintiffs to add to rent expenses that they had incurred on behalf of defendants. In short, in the overall context of its analysis, the trial court treated plaintiffs' failure to use a lease remedy not as effecting a waiver of other remedies but as evidence supporting a finding that plaintiffs intended to incur the expense without seeking reimbursement from defendants under the lease at all.

■    We are bound by the trial court's findings of fact if they are supported by any evidence in the record. *Loverin v.*

_____

*Cooke*, 174 Or App 426, 436-41, 26 P3d 822 (2001) (Armstrong, J., concurring) ("Precisely because letter and memorandum opinions by trial courts are not understood to constitute rulings on issues, courts do not write them as if they were."). In this case, though, it is not necessary to revisit that issue.

*Paulus*, 160 Or App 605, 610, 982 P2d 20 (1999); *Fogh v. McRill*, 153 Or App 159, 168, 956 P2d 236, *rev den*, 327 Or 431 (1998). There is evidence to support the court's findings regarding the parking lot repairs and, therefore, we reject plaintiffs' first assignment of error.

■ In the second assignment of error, plaintiffs challenge the trial court's failure to award them the total amount of damages requested on the waste claim, $12,999.81, which included the cost of repairing damage that occurred because of leaks in the roof and sewer system. The court awarded plaintiffs only cleanup costs on the waste claim, which the court assessed at $1,100. Once again, plaintiffs assert that the court's letter opinion discloses an erroneous application of law. And again, we conclude that the trial court's decision was based on findings of fact that are supported by evidence in the record.

As pertinent to the waste claim, plaintiffs focus on the following portion of the trial court's letter opinion:

"The threshold question is whether the defendants are responsible for the repairs needed due to the leaking roof and sewer. In this case, the only 'purposeful destruction or abuse' could be the failure by the defendants to make repairs to the roof and sewer. These problems had been brought to the attention of the plaintiff[s]. There was no showing that the defendants had caused the roof to leak or had caused the sewer problem. There was also no showing that the damages to the property could not have been avoided or mitigated if the plaintiff[s] had promptly arranged for the repairs. Under these circumstances, it would seem unreasonable to interpret the statute to make tenants responsible for the resulting damages as waste."

According to plaintiffs, because the lease obligated defendants to maintain and repair the premises, and the evidence showed that, with respect to the roof and sewer system, they failed to do so, the omission constituted waste. *See* ORS 105.805;³ *see also Whistler v. Hyder*, 129 Or App 344, 349, 879

---

³ ORS 105.805 provides:

"If a guardian, conservator or tenant in severalty, or in common, for life or for years of real property commits waste thereon, any person injured thereby may maintain an action at law for damages against the guardian, conservator or tenant. In the action there may be judgment for treble damages, forfeiture of

P2d 214, *rev den*, 320 Or 453 (1994) (holding that waste occurs when the person in possession of the land, by act or omission, causes the property's value to decrease as the result of abuse or destruction, thereby causing injury to the property and the holders of the legal interests in it).

As plaintiffs see it, in setting damages, the trial court ignored the fact that, by failing to repair the roof and sewer system, defendants caused the property to decrease in value. We disagree. The court properly focused on the requirement that waste be the result of "abuse or destruction." The court found that defendants were unable to afford extensive repairs to the roof and sewer system. The court emphasized that, upon discovering them, defendants immediately notified plaintiffs of the problems with the roof and sewer. The court further found that, despite having that information, plaintiffs failed to avoid the ensuing injuries to the premises or mitigate their damages. *See Zimmerman v. Ausland*, 266 Or 427, 436, 513 P2d 1167 (1973) (holding that the issue whether a plaintiff properly mitigated damages is a question of fact); *Rice v. City of Portland*, 141 Or 205, 235, 17 P2d 562 (1932) (holding that the issue whether a plaintiff took reasonable steps to avoid injury is one of fact). Under those circumstances, the court found as fact that plaintiffs were not entitled to recover the damages sought. Because there is evidence to support that finding, we reject plaintiffs' second assignment of error.

Affirmed.

---

the estate of the party committing or permitting the waste and eviction from the property. Forfeiture and eviction shall only be given in favor of the person entitled to a reversion against the tenant in possession, when the injury to the estate in reversion is determined in the action to be equal to the value of the tenant's estate or unexpired term, or when the waste was committed with malice."

The statute does not further define "waste."