Argued and submitted November 30, 2011, affirmed May 31, 2012

Bernard D. BLUNIER
and Jean Marie Blunier,
husband and wife,
*Plaintiffs-Respondents,*

*v.*

Richard L. STAGGS, II,
*Defendant,*

*and*

Walter Scott ZWINGLI,
*Defendant-Appellant.*

Polk County Circuit Court
09P10477; A145975

279 P3d 826

Terrance J. Slominski argued the cause for appellant. With him on the briefs were David W. Venables and Slominski and Associates.

Teresa Ozias argued the cause for respondents. With her on the brief was Shetterly, Irick & Ozias.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.*

---

* Wollheim, J., *vice* Landau, J. pro tempore

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant Zwingli appeals from a general judgment of foreclosure based on his failure to comply with terms of a trust deed in favor of plaintiffs, the beneficiaries under the deed—in particular, his failure to pay plaintiffs for attorney fees that they incurred in attempting to enforce the term of that deed under which defendant agreed to 'preserve and maintain the property in good condition and repair" and "not to commit or permit any waste of said property."[1] Defendant argues, first, that he did not violate that term and, second, that nothing in the trust deed compels him to pay for attorney fees incurred by plaintiffs prior to foreclosure itself. We disagree with both of defendant's arguments. We therefore affirm.

Because judicial foreclosure of a trust deed is an equitable proceeding, we have the discretion to review this case *de novo*. ORS 19.415(3)(b). However, neither party presents an argument in favor of our doing so, nor do we perceive one. Accordingly, "[w]e review the trial court's legal conclusions for errors of law, and we are bound by its factual findings if there is any evidence to support them." *Neff v. Sandtrax, Inc.*, 243 Or App 485, 487, 259 P3d 985, *rev den*, 350 Or 716 (2011) (footnote omitted). If there is a disputed issue of fact and the trial court could have reached the result that it did only if it resolved the dispute in one way, we will presume that it did so. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

In 2004, plaintiffs sold a house to Staggs in exchange for a promissory note secured by a trust deed. In April 2006, Staggs was in default, and plaintiffs started foreclosure proceedings. Staggs assigned all of his interest in the property to defendant, subject to the original promissory note and trust deed in favor of plaintiffs. Defendant cured the existing defaults, including the expenses that the trust had incurred in initiating foreclosure. After evicting a tenant, defendant took possession of the property in June 2007 and began

---

[1] Although the original grantor of the deed, Staggs, was a defendant at trial, the only defendant on appeal is Zwingli, Staggs's successor. Hereafter, references to defendant are to Zwingli only.

extensive renovations, including replacing the roof, windows, doors, gutters, exterior railings, and electrical wiring; repairing the sewer and water connections; leveling the foundation; closing holes in the crawl space beneath the house; and refinishing and carpeting the floors. Defendant undertook the improvements to increase the value of the house and to bring it up to code so that a future buyer could obtain financing.

In October and November 2007, plaintiff Jean Blumier observed piles of construction debris and garbage on the property and became concerned; previously, plaintiffs had lost insurance coverage due to similar debris accumulation. Plaintiffs sent defendant a certified letter asking him to clean up the property; defendant refused to accept the letter, and it was returned to plaintiffs. At that point, they turned the matter over to their attorney, Ozias. On November 15, 2007, Ozias (on behalf of plaintiffs) wrote to Staggs and defendant, complaining about the condition of the property and demanding that it be cleaned up within 30 days to avoid default. Ozias relied on a provision in the trust deed stating that the grantor agrees "[t]o protect, preserve, and maintain the property in good condition and repair" and "not to commit or permit any waste of said property." Ozias also stated that, to avoid default, defendant had to pay the additional attorney fees that plaintiffs had incurred in the process of enforcing compliance—that is, the attorney fees incurred in demanding that defendant pay attorney fees. Defendant cleaned up the property and informed plaintiffs of that fact. Ozias then sent defendant an e-mail informing him that he still owed $460.75 for attorney fees. Defendant refused to pay; Ozias wrote defendant several times attempting to collect the fees, each time adding the fees for her demand letters to the underlying debt obligation. Defendant paid off the promissory note in January 2009, but continued to refuse to pay attorney fees. For that reason, the reconveyance of the property to defendant was not recorded. Finally, in June 2009, plaintiffs filed this action against defendant and Staggs to foreclose on the trust deed, alleging that defendant was in default for his failure to pay attorney fees and costs, which, by then, amounted to $2,054.04.

At trial, defendant argued that the property was in very bad condition when he took possession in 2007 and that

the condition of the property a few months later when plaintiffs and Ozias demanded a clean-up was the normal byproduct of the renovation work. Further, defendant argued that Ozias's fees were for her legal advice and services to plaintiffs, not fees incurred as an attorney or trustee enforcing the trust deed. The trial court ruled that, by purchasing the property from Staggs, defendant assumed Staggs's interest and obligations under the 2004 trust deed. Defendant does not assign error to that ruling. The court then stated:

> "[Defendant], you are the very best witness, aside from all these pictures, * * * [to] what you described as the deplorable condition of the house. It was in a condition of being wasted. It was waste, waste was going on there. The responsibility of the grantor, that would be you.

> "And what you said was 'well, I was fixing it and so why, why didn't they just leave me alone?' The reason they didn't just leave you alone is because you, as the successor to the grantor, are required, not to permit any waste.

> "The property was in a condition of waste. And the trust is entitled to remedy that and to take whatever reasonable actions were necessary to remedy that. And you're right, they stayed all over you. They kept saying 'fix it, fix it, do it now.' And it didn't get done now. It got done later."

The court also held that defendant was in default for failing to pay Ozias's attorney fees. Defendant renews his arguments on appeal.

"Waste occurs when the person in possession of the land, by act or omission, causes the property's value to decrease as the result of abuse or destruction, thereby causing injury to the property and the holders of the legal interests in it." *Whistler v. Hyder*, 129 Or App 344, 349, 879 P2d 214, *rev den*, 320 Or 453 (1994). Although the Oregon courts have not announced the standard of review that applies to waste, the proper standard must reflect that the question whether waste has occurred is a legal conclusion based on historical facts such as, for example, facts relevant to the condition of the property and the acts or omissions of the person in possession. We therefore review the historical facts for any evidence, Or Const, Art VII (Amended), § 3, and the ultimate ruling on waste for legal error.

In the present case, although there is a dispute between the parties as to the condition of the property when defendant came into possession, there is *no* dispute as to the condition of the property in 2004 when the deed of trust was executed by Staggs and plaintiffs, nor is it disputed that defendant succeeded to Staggs's obligation under the trust deed to avoid waste and "preserve and maintain the property in good condition." Plaintiff Jean Blunier testified that, in 2004, the property

> "did need some repairs, but we had cleaned it up from top to bottom * * *. We had to just take out all the carpeting and we painted all the walls and everything. There was some things left to do. * * * And the back yard was in good shape because my son-in-law and his brother had burned and rototilled all the debris that was out there from that renter we had."

A photograph, admitted as Exhibit 3, shows a normal-looking house. Further, there is no dispute as to the condition of the house and grounds when plaintiffs demanded that the property be cleaned up in 2007. Defendant's own testimony and pictures offered by plaintiffs as exhibits depicted the debris that existed for at least a month. Further, plaintiff Jean Blunier testified about her concern that the debris could cause problems with insuring the property based on past loss of insurance coverage due to similar conditions.

The only disputed fact is whether the condition at that time was the result of "abuse or destruction," *Whistler*, 129 Or App at 349, or the justifiable result of ongoing repairs that were increasing the property's value. Plaintiff Jean Blunier acknowledged that the work being done on the house would necessarily create some problems, but insisted that the problems had persisted too long to qualify as the necessary incidents of the rehabilitation work:

> "Q [Defense Counsel]:  Well, since you were watching this house, were you aware that perhaps the downspouts had to be taken off while the new roof was put on?
>
> "A:  Right. But I didn't think he was in a timely manner of putting them back up."

Testimony from Ozias confirmed that conclusion: "[T]he project had been * * * ongoing and had not been completed in a

reasonable manner or reasonable time, sorry. The roof project needed to be completed and all the excess materials needed to be removed." We can discern from the trial court's statement, quoted above, that it agreed: "They kept saying 'fix it, fix it, do it now.' And it didn't get done now. It got done later." That finding, then, is supported by evidence in the record: Blunier's and Ozias's testimony. Based on these undisputed facts, we conclude that the trial court's conclusion that waste had occurred was correct. Further, in addition to the requirement to avoid waste, the deed of trust required defendant to keep the property "in good condition and repair," and there is no evidence to contradict the abundant evidence that he had failed to do so.

Defendant contends, however, that he was not obligated under the deed of trust to pay the attorney fees that the trust incurred by paying Ozias for her role in the proceedings leading to the trial, that is, for her role in (1) attempting to compel defendant to restore the property to "good condition" and remedy "waste," and (2) attempting to compel defendant to pay for that underlying attempt.[2] Defendant's argument cannot be reconciled with the trust deed itself. Paragraph seven of that document provides that the grantor—again, defendant as the successor to Staggs's obligations—agrees

> "[t]o pay all costs, fees and expenses of this trust including the cost of title search, as well as the other costs and expenses of the Trustee incurred in connection with or in enforcing this obligation together with trustees' and attorneys' fees actually incurred."

After the second word, "pay," the paragraph consists of a list of that verb's direct objects, that is, a list of what the grantor agrees to pay, as modified by adjectives and phrases. The list consists of (1) all costs, fees, and expenses of the trust; (2) other costs and expenses of the trustee incurred in *connection with* "this obligation," that is, the obligation to pay costs, fees and expenses of the trust; (3) other costs and expenses of the trustee incurred in *enforcing* the obligation to pay all costs, fees and expenses of the trust; (4) trustees' fees actually incurred; and (5) attorney fees actually incurred. The trial

---

[2] Defendant challenges only the entitlement to fees; he does not challenge the number of hours claimed nor the hourly rate.

court concluded that Ozias's attorney fees incurred in attempting to enforce the no waste obligation fell within the first item on the list, that is, her fees were among the "expenses of this trust":

> "So you are required, as a grantor, to pay all costs, fees, and expenses of the trust. That's the trust that has the right to have the property remain in good condition and repair, contrary to what you said was the condition when you took possession of it.

> "But it was in that condition. And it is that condition which is entitled to [justifies?] enforcement action, including costs and expenses and trustees' and attorney's fees actually incurred. Well, there weren't any trustee's fees incurred because the bank was the trustee,[3] but there were attorney's fees incurred in enforcing the terms of the trust deed.

> "They're expenses of the trust and entitled to be recovered."

Defendant argues that item three in the list above, costs incurred by the trustee in enforcing "this obligation," does not encompass expenses incurred by the trustee in an attempt to enforce the no waste provision of trust. That argument misses the point. The court did not rely on item three, and, in any event, we do not read that provision, as defendant does, to require that "attorneys' fees" be "incurred in connection with or in enforcing" the trust. The phrase "incurred in connection with or in enforcing this obligation" modifies "the other costs and expenses of the Trustee." Under the language of the trust deed, then, defendant was responsible for paying "all costs, fees[,] and expenses of this trust including * * * attorneys' fees actually incurred." There is no stated limitation on the type of attorneys' fees incurred other than that they be an expense of the trust, and we conclude that a fee reasonably incurred with respect to bring defendant into compliance with the no waste requirement is such an expense. Therefore, defendant was obligated to pay Ozias's

---

[3] Ozias testified that she was a trustee, and no one contradicted that assertion. However, the deed of trust specifies that First American Title Insurance Company of Oregon was designated the trustee when the deed was executed, and nothing in the record contradicts that, either. Ultimately, however, the identity of the trustee is not relevant to our resolution of this case.

attorney fees related to the November 15, 2007, letter and her fees related to collecting that debt.[4]

Further, Ozias's fees were properly added to the underlying debt pursuant to the language of the trust deed:

> "[s]hould the Grantor fail to make payment of * * * other charges payable by Grantor * * * Beneficiary may, at its option, make payments thereof, and the amount so paid, with interest at the rate set forth in the note secured hereby, together with the obligations described in paragraph[ ] 7 * * * of this Trust Deed [the attorney fees provision], shall be added to and become a part of the debt secured by this Trust Deed * * *."

The trust deed explicitly allowed for unpaid attorney fees to be added to the underlying debt obligation.

Defendant argues that his refusal to pay the attorney fees did not constitute a material breach and that therefore, foreclosure should not have occurred because he otherwise paid the underlying debt in full. In other words, he argues that foreclosure on the basis of the unpaid attorney fees alone is improper. However, as quoted above, the trust deed authorized that amounts owed under the attorney fees provision be added to and become part of the secured debt. Therefore, defendant's failure to pay the fees amounted to a default under the trust deed. The trust agreement provides that,

> "[u]pon default by Grantor in payment of any indebtedness secured hereby or in Grantor's performance of any agreement contained hereunder, * * * the Beneficiary may declare all sums secured hereby immediately due and payable. In such event Beneficiary, at its election, may proceed to foreclose this trust deed * * *."

Defendant defaulted "in payment of any indebtedness secured hereby" by failing to pay the attorney fees portion of the underlying debt. Plaintiffs therefore were entitled to

---

[4] Defendant argues that, if we hold that plaintiffs can recover attorney fees in this case, we create the possibility that attorneys for grantees will generate illegitimate fee claims by engaging in frivolous, unfounded, repetitive, or trivial demands. That is not the situation presented by this case; as noted, the demand to comply with the no waste provision was genuine and legitimate. We need not and do not consider any other circumstances.

enforce the attorney fees obligation in the trust deed by initiating foreclosure.

Affirmed.