Argued and submitted November 5, 2015, affirmed May 3, petition for review denied August 3, 2017 (361 Or 800)

Christine LYNCH,
in her capacity as Trustee of the
Restated Chris S. Muller Survivor's Trust,
*Appellant,*

*v.*

Tony ROMANO,
individually, and
Rick A. Muller, individually,
*Respondents.*

Polk County Circuit Court
11P10955; A155071

396 P3d 267

Matthew Whitman argued the cause and filed the briefs for appellant.

Joel D. Kalberer argued the cause and filed the brief for respondent Rick A. Muller.

No appearance for respondent Tony Romano.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

## EGAN, J.

Petitioner, as trustee of her parents' survivor's and decedent's trusts, appeals from a probate court's judgment denying petitioner's petition for approval of her plan to redistribute trust assets between the trusts. Petitioner contends that the probate court erred as a matter of law when it refused petitioner's plan of refunding the decedent's trust as a remedy for her father's actions as trustee that improperly defunded the decedent's trust. We conclude that the probate court did not err. Accordingly, we affirm.

Neither party requests that we review *de novo*, and we decline to do so. *See* ORS 19.415(3)(b). Because petitioner requested only equitable relief and a probate court has broad discretion in crafting equitable relief, *see Port of Morrow v. Aylett*, 186 Or App 70, 76, 62 P3d 427 (2003), we review the probate court's order for abuse of discretion. A court abuses its discretion if it "is exercised to an end not justified by, and clearly against, evidence and reason." *State v. Mason*, 100 Or App 240, 243, 785 P2d 378 (1990). We review the court's legal conclusions for errors of law and are bound by the court's factual findings if there is any evidence to support them. *Blunier v. Staggs*, 250 Or App 215, 217, 279 P3d 826 (2012).

We describe the facts as found by the probate court, supplemented with undisputed evidence from the record. Petitioner and respondent[1] are siblings. Their parents, Chris and Lois Muller, created the Muller Family Revocable Trust (MFRT), which included a survivor's trust and a decedent's trust. Chris and Lois properly amended the MFRT, including the decedent's trust, twice during Lois's lifetime. Under the original version of the decedent's trust, respondent was to receive the family farm, where he lived; petitioner was to receive a 20-acre property in Lincoln City, Oregon, and a house in Dallas, Oregon; and both were to split the remainder of the decedent's trust. The second amendment removed respondent as a beneficiary of the decedent's trust and made petitioner the sole beneficiary of that trust, from which she

---

[1] Respondent Tony Romano, petitioner's son, supported petitioner's petition below and did not appear on appeal. Thus, we use "respondent" in this opinion to refer only to respondent Rick Muller.

was to receive a collection of antiques, the Lincoln City property, and the remainder of the decedent's trust.

Under the MFRT, when Lois died in 1993 the survivor's and the decedent's trusts became separately administered trusts. The decedent's trust became an irrevocable credit shelter trust, and the survivor's trust remained a revocable trust during Chris's life. Chris was named trustee of both trusts. To fulfill the tax purposes of the trusts, the decedent's trust was to be funded with $600,000 of trust property.

Chris, as trustee of the decedent's trust after Lois's death, had the power to choose how to initially fund the decedent's trust. In accordance with the advice of his lawyer, Chris kept a handwritten ledger of the assets of the decedent's trust. According to that ledger, in 1995, Chris funded the decedent's trust with the 20-acre property in Lincoln City, which he valued at $560,708, and $32,750 in stock. The stock was sold in 1997 for $71,118.02, which remained an asset of the decedent's trust. In 1999, Chris removed the Lincoln City property from the decedent's trust, sold it, and used the proceeds to create a charitable remainder trust that benefitted him and his second wife, Dolores Muller. The ledger shows that Chris replaced the Lincoln City property with two Polk County properties that Chris valued at $327,000 and a Depoe Bay property valued at $175,000.

In the following years, Chris moved assets between the decedent's and survivor's trusts and withdrew assets from the decedent's trust, such that he admitted to his attorney that he had lost track of which trust held which assets. His attorney warned him that his actions as trustee may have caused all of the tax benefits of the decedent's trust to be lost and told him that he could not amend the decedent's trust. Nevertheless, Chris directed his lawyers to stop their efforts to identify, track, and vest the trust assets. In 2008, Chris's lawyer attempted to enlist the help of an estate planning specialist to repair the damage Chris had done and was told that the decedent's trust could not be remedied and the tax purposes of the trust may have been effectively destroyed.

Chris amended the original survivor's trust, created the Complete Restatement of the Chris Muller Survivor's

Trust, and amended that restatement three times. Under the third and final amendment to the restatement of the survivor's trust, Tony Romano, petitioner's son, was to receive the family farm, subject to respondent's life estate. It also granted petitioner and respondent each one half of the Depoe Bay property and the remainder of the survivor's trust.

When Chris died in 2009, petitioner became the successor trustee. She hired Jonathan Levy, a lawyer who specializes in estate planning, to help administer the trusts, attempt to restore the tax benefits of the trusts, and repair other problems that petitioner found that Chris had created for the trusts. Levy testified that he had never seen such a damaged estate plan, and he initially believed that the trusts were beyond repair. He said that most experts would have agreed and would not have attempted to repair the damage. Levy tried to trace and unwind the improper transactions, but he could not sort through the "rat's nest" of exchanges that Chris had done. Levy focused his attention on attempting to restore the tax benefits of the estate and to refunding the decedent's trust to the value it would have held had the Lincoln City property not been removed in 1999. Levy testified that Chris's transactions as trustee of the decedent's trust "short-changed" it by nearly $400,000, in 1999 dollars, because the properties that Chris's ledger listed to replace the Lincoln City property were worth far less than the value of the Lincoln City property at the time it was sold. Petitioner and Levy created a plan to refund the lost value of the decedent's trust by reallocating assets held in the survivor's trust in 1999 and at the time of Chris's death, or assets directly traceable from those assets, to the decedent's trust. Levy testified, however, that the probate court's decision to approve or deny the plan would not affect the estate's taxes.

Petitioner then petitioned the probate court for instructions and approval of her plan to refund the decedent's trust. In the petition, petitioner asked the court for equitable relief only, specifically requesting that the probate court use its equitable powers to approve her plan to restore to the decedent's trust the full value, in 1999 dollars, of the Lincoln City property that was removed by Chris in 1999.

Using their 1999 values, petitioner's proposed plan sought to reallocate three properties from the survivor's trust to the decedent's trust—including the family farm on which respondent lived and in which he was granted a life estate in the final version of the survivor's trust and a property that petitioner was specifically granted under the final version of the survivor's trust—and $68,000 in cash. In addition, petitioner proposed to allocate to the survivor's trust all other property not in the decedent's trust, including a property in Arizona that Chris had deeded to her in 2007, two years before his death, which gave her the right of survivorship.

Petitioner alleged in the petition that Chris's actions as trustee had stripped value from the decedent's trust in breach of his fiduciary duties. Petitioner argued to the probate court that petitioner, as successor trustee, had "the right and obligation" to remedy Chris's breach. Petitioner requested that the probate court approve her plan and past actions to reallocate property to the decedent's trust, or, if the court did not approve the plan, she asked the probate court to "instruct[] her in the proper reallocation of assets to remedy Chris S. Muller's past breaches of fiduciary duty."

Respondent objected to petitioner's asset reallocation plan, disputed that Chris had breached his fiduciary duty, and asked the probate court to reject petitioner's plan and prior reallocation actions. Instead, respondent asked the probate court to instruct the trustee to distribute the trust property as set forth in the final versions of the trust documents.

In its letter opinion, the probate court framed the issue before the court as whether it should use its equitable powers to refund the decedent's trust. The probate court found that, throughout his life, Chris gave petitioner and Romano a considerable amount of personal property, vehicles, and real property from his estate. The probate court stated that the testimony showed that petitioner "believes she should have the entirety of her parents' estate" and that it was "very clear * * * that Chris wanted [respondent] to have a life estate in the farm property." The probate court denied petitioner's request to provide equitable relief in the

form of approving her plan to refund the decedent's trust. The probate court explained its decision as follows:

"[T]his estate is not repairable. Chris did not follow the estate plan during his life. By not following the plan he destroyed it. It is not fair, just, or equitable to take from [respondent] the life estate in the farm property to refund the decedent's trust."

The probate court instructed petitioner to distribute the assets of the estate in the way that respondent had requested: according to the final versions of the trust documents.

On appeal, petitioner contends that the probate court erred by not providing petitioner a remedy for Chris's defunding of the decedent's trust. We understand petitioner to be making two arguments on appeal. First, she argues that for every right there must be a remedy and she was denied a remedy for Chris's "breaches." Her second argument is that the probate court's judgment went outside of the issues framed by the parties' pleadings. The question we must answer on appeal is whether the probate court abused its discretion when it denied petitioner's petition and instead ordered the assets of the estate to be distributed according to the final versions of the trust documents. We conclude that it did not and affirm.

Petitioner first argues that the probate court erred because it found that Chris had breached his fiduciary duties as trustee but failed to provide a remedy for those breaches. Petitioner contends that "[f]or every right there must be a remedy." She cites *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 108-09, 23 P3d 333 (2001), *overruled by Horton v. OHSU*, 359 Or 168, 376 P3d 998 (2016), not for its discussion of the Remedy Clause of Article I, section 10, of the Oregon Constitution, but for what she describes as the "older and even more powerful concept, expressed in the 18th century by Blackstone * * * that where a violation of a right is shown, as it was here, the courts *exist* to provide remedies." (Emphasis in original.) In support of her position, she quotes two portions of Blackstone, as quoted in *Smothers*, explaining that the violation of a *legal* right requires a *legal* remedy to restore the right. *See Smothers*, 332 Or at 99, 108. The problem with petitioner's assertion on appeal is that she did

not ask the probate court to provide a legal remedy for a violation of a legal right. She asked the court to provide equitable relief only.

It is true, as petitioner argues, that probate courts cannot ignore principles of law in favor of the equities. *See Nordling v. Cochran*, 98 Or App 747, 750, 780 P2d 805 (1989) ("Even in equity, a court does not have the authority to ignore existing principles of law in favor of its view of the equities."). But petitioner has not identified any legal right of hers that has been violated and has not pointed to any legal or constitutional principle that the probate court ignored or disregarded in its order. Although the parties dispute whether Chris breached his fiduciary duty to the decedent's trust, the probate court's letter opinion does not state that it found that Chris had breached his fiduciary duties. Moreover, whether Chris breached his duties does not affect our inquiry on appeal.

Petitioner's petition did not require the probate court to determine whether Chris breached his fiduciary duties. The petition did not seek to hold the estate of the former trustee responsible for his breaches. Rather, petitioner asked the court to use its equitable powers to approve her asset reallocation plan to repair the damage done by Chris to the decedent's trust. She alleged that Chris had breached his fiduciary duties as an equitable reason to grant her request. Furthermore, even if the probate court had found that Chris had breached his fiduciary duties as trustee, petitioner does not point to any right as successor trustee that was violated and that would have required a remedy for those breaches. The right to a remedy requires remedies only for legally recognized rights that already exist; it "does not guarantee a remedy for a right that [a] plaintiff never had." *Piper v. Scott*, 164 Or App 1, 5, 988 P2d 919 (1999), *rev den*, 329 Or 650 (2000).

Petitioner, as trustee, petitioned the probate court for equitable relief to approve her plan to refund the decedent's trust with assets from the survivor's trust. Regardless of whether Chris breached his fiduciary duties as trustee, petitioner has not identified, or sought relief for, a violation of any legally recognized right that would have required the

court to grant her a remedy. Thus, the probate court did not err by failing to provide her with a remedy for Chris's actions as the predecessor trustee.

Next, petitioner argues that the probate court improperly "elevated Chris Muller's later testamentary wishes toward [respondent] over Chris Muller's fiduciary obligations as trustee" and was "preoccupied *** with the fact that the re-allocation that [petitioner] proposed would divest Respondent Rick Muller of a life estate in a particular piece of real property." The result, according to petitioner, was that the probate court erred by ordering relief outside of what the parties contemplated.

Ordinarily, a court sitting in equity has broad discretion to craft relief to fit the circumstances of each particular case. *Aylett*, 186 Or App at 76. "The general principle underlying equitable remedies (as opposed to law damages) is to grant such relief as will best accomplish the ends of justice." *Cameron v. Benson*, 295 Or 98, 103, 664 P2d 412 (1983). There are limitations on the scope of equitable relief that a court may order. *Aylett*, 186 Or App at 76. But the limitation argued by petitioner is inapplicable here. Petitioner quotes *Central Oregon Fabricators, Inc. v. Hudspeth*, 159 Or App 391, 403, 977 P2d 416, *rev den*, 329 Or 10 (1999), for her argument that, "[i]n law or equity, a decree or judgment must be responsive to the issues framed by the pleadings and a trial court has no authority to render a decision on issues not presented for determination."

We reject petitioner's argument. In this case, petitioner sought equitable relief to repair the damage to the decedent's trust caused by Chris's actions, although there was no way to unwind those actions. Both the petition and the response asked the court for instruction even if it rejected petitioner's plan, and, in particular, the response specifically asked the court to direct petitioner to distribute the assets in accordance with controlling trust documents. The probate court framed the issue before it as whether it should use its equitable powers to refund the decedent's trust.

The probate court determined that the ends of justice would best be accomplished by distributing the trust

assets in the way that respondent had requested. The probate court made that decision in light of the extreme damage done to the decedent's trust by Chris, the settlors' intent throughout the different versions of the trust documents, the property given to petitioner throughout Chris's life, its finding based on testimony that petitioner sought to take as much of the estate for herself and divest respondent, and the lack of tax effects that the probate court's decision would have on the estate. The probate court did not improperly weigh Chris's intent to give respondent a life estate in the family farm. That was merely one of the circumstances that the probate court weighed in deciding not to approve petitioner's refunding plan.

All of the probate court's findings are supported by testimony, it did not refuse to follow any statutory requirements, and the basis for the probate court's order did not rely on legal theories, or even remedies, other than those framed by the parties. Therefore, we conclude that the probate court did not abuse its discretion when it declined to approve petitioner's plan, took the circumstances as testified before it into consideration, and instructed petitioner to distribute the trust assets in accordance with the trust documents, as requested by respondent.

Affirmed.