No. 891 October 8, 2025 173

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Estate of C. Robert Suess,
Deceased.

Cassandra SUESS
and Christopher D. Suess, beneficiaries of the
Estate of C. Robert Suess,
*Petitioners-Respondents,*

*v.*

John M. SUESS,
individually and as Personal Representative of the
Estate of C. Robert Suess,
*Respondent-Appellant.*

Lane County Circuit Court
18PB05409; A181549

R. Curtis Conover, Judge.

Argued and submitted November 5, 2024.

George W. Kelly argued the cause and filed the briefs for appellant.

Helen C. Tompkins argued the cause and filed the brief for respondents.

Before Ortega, Presiding Judge, Hellman, Judge, and Jacquot, Judge.*

JACQUOT, J.

Reversed and remanded as to the $36,250 award for the acreage referenced in Article 3.39.3 of the fourth codicil; attorney fee award vacated and remanded; otherwise affirmed.

_____
  * Jacquot, Judge *vice* Mooney, Senior Judge.

**JACQUOT, J.**

In this probate dispute between siblings, the estate's personal representative (PR) challenges the probate court's distribution of certain real property under the testator's will. The PR appeals from a limited judgment that granted the property distribution method proposed by petitioners and provided a fair market value for some of the property. He also appeals from an award of attorney fees. Because the probate court erred in calculating the fair market value of the remainder 36 acres of the property, we reverse and remand for recalculation of that value and vacate and remand the attorney fee award. We otherwise affirm.

Father died testate and appointed one of his five children, John, as the PR to administer his will. The will was amended four times, with the final amendment being the fourth codicil, which is at issue in this case. The codicil gifted real property, the "Crow Road Property," to two other children, Christopher and Cassandra (petitioners). Christopher was to receive 40 acres "outright." Cassandra was to receive 48 acres "outright," to include "the eight (8) acres that include the main house, mobile home and small house." The remaining approximately 36 acres "may be used by my [PR] for mitigation for wet land bartering with the City of Eugene. If such use is not feasible or necessary, the remaining acreage is to be distributed as part of the residue."[1] Other than the eight acres with houses, the codicil does not specify which acres go to which beneficiary. However, it was discovered during probate that zoning prohibited separate parcel sizes of less than 40 acres, meaning that the distribution plan provided for in the codicil could not be completed as instructed.[2] The codicil then provides that the PR "has the authority to establish a limited liability company ('LLC') along with an Operating Agreement that specifies the distributions set forth in this Section, and transfer the property to such LLC if doing so will effect my intentions with respect to distribution of this property."

---

[1] The record references a varying number of remaining acres. For ease of analysis, we proceed assuming there are approximately 36 acres, as did the probate court.

[2] The parties dispute when the PR became aware of the zoning problem. The timing of the realization is not important to our disposition, and we proceed under the assumption that it was discovered during probate.

Because the property could not be distributed as provided for in the will due to the zoning restriction, petitioners proposed to jointly receive title to the full property and pay the estate fair market value for the 36-acre remainder at $1,000 per acre. They argued that the testator wanted them to have the property itself, not the value of the property, and their proposed distribution was the best way to effect those intentions. The PR opposed that distribution, arguing that the fair market value proposed by petitioners severely undervalued the remainder property, and if he accepted the amount offered, he would be violating his fiduciary duty to the beneficiaries of the remainder. The parties attempted on multiple occasions to come to an agreement, but the price for the 36-acre remainder appears to be what kept them from reaching an agreement. The PR provided three alternative proposed distributions. The PR first proposed that the property be split into three pieces—40 acres to Christopher, 40 acres to the residue, and 44.25 acres to Cassandra—and that Cassandra be reimbursed for 3.75 acres, to equal her 48 acres. He argued that that distribution was most in line with the will. Second, he proposed that he sell the entirety of the property to a third party and then pay the proceeds to each beneficiary according to their share in the property. Finally, he proposed that he establish an LLC and transfer the property to it, as allowed for in the will. However, he noted that that distribution would diminish the value of the property and was the least preferable option. Petitioners opposed all three of those distribution proposals.

The probate court agreed with petitioners and ordered that all of the acres be conveyed to petitioners jointly. It further ruled that petitioners would reimburse the estate $1,000 per acre for a total of approximately $36,000.

On appeal, the PR raises three assignments of error. First, he argues that "[t]he court erred in ordering the PR to sell the residue's interest in the 36.25 acres to petitioners." Second, he argues that the probate court erred in ordering the sale for only $1,000 per acre. Finally, he argues that the court erred in its award of attorney fees.

Neither party requests that we review *de novo*, and we decline to exercise our discretion to do so. *See* ORS

19.415(3)(b) (describing discretionary *de novo* review); ORAP
5.40(8)(c) (explaining that we exercise *de novo* review "only
in exceptional cases"). A probate court has broad discre-
tion in crafting equitable relief, and we review the probate
court's order for abuse of discretion. *Lynch v. Romano*, 285
Or App 243, 244, 396 P3d 267, *rev den*, 361 Or 800 (2017).
"A court abuses its discretion if it 'is exercised to an end
not justified by, and clearly against, evidence and reason.'
We review the court's legal conclusions for errors of law and
are bound by the court's factual findings if there is any evi-
dence to support them." *Id*. (internal citations omitted). "In
the absence of express factual findings, we assume that the
trial court found the facts in a manner consistent with its
ultimate conclusion." *Maloney v. Bryant*, 332 Or App 745,
747, 552 P3d 90 (2024) (internal quotation marks omitted).
Probate courts cannot ignore principles of law in favor of the
equities. *See Nordling v. Cochran*, 98 Or App 747, 750, 780
P2d 805 (1989) ("Even in equity, a court does not have the
authority to ignore existing principles of law in favor of its
view of the equities.").

       To begin, we understand the PR's first assignment
of error to effectively challenge two decisions by the probate
court. First, he challenges the probate court's determina-
tion that it had authority, under the terms of the will, to
distribute the property as it did. That is a legal determina-
tion that we review for errors of law. Second, he challenges
the probate court's decision to distribute the property as it
did, which was an equitable determination. We review that
determination for an abuse of discretion.

       However, petitioners argue that the PR failed to
preserve his challenge to the probate court's distribution of
the property. We generally will not consider claims of error
that were not raised in the trial court, and to adequately
preserve an issue, "a party must provide the trial court with
an explanation of his or her objection that is specific enough
to ensure that the court can identify its alleged error with
enough clarity to permit it to consider and correct the error
immediately, if correction is warranted." *State v. Wyatt*, 331
Or 335, 343, 15 P3d 22 (2000). "We have consistently held
that arguments urging a trial court to make a particular

finding, exercise its discretion in a particular way, or the like are inadequate to preserve a claim that the trial court *lacked legal authority* to rule in a way other than that urged by the proponent." *Dept. of Human Services v. D. F.*, 336 Or App 263, 265, 560 P3d 769 (2024) (emphasis in original).

Here, the PR did not argue that the probate court lacked the authority to distribute the property as requested by petitioners. Instead, the PR argued that the court *should* adopt one of his suggested methods of distribution over that proposed by petitioners. Further, the PR did not argue that the probate court would abuse its discretion if it distributed the property as requested by petitioners. When directly asked whether the court would be "abusing my discretion if I followed [petitioners'] suggestion," the PR's attorney responded "I don't believe so, Your Honor. Nor would you be abusing your discretion if you ordered the real property sold and distributed or moved to an LLC. I think you have the authority to make all those options." Because the PR did not argue that the probate court did not have the authority or would be abusing its discretion by distributing the property as proposed, only that it should choose one of his proposed methods instead, his first assignment of error is not preserved for our review.[3] *See State v. Gailey*, 317 Or App 285, 286-87, 503 P3d 1290, *rev dismissed*, 369 Or 785 (2022) (defendant did not preserve argument because his objection "did not suggest that he believed that the trial court lacked authority," only that the court's decision "was not necessary").

Second, we must determine whether any evidence supports the probate court's decision regarding the fair market value of the acres. Fair market value is a question of fact. *City of Bend v. Juniper Utility Co.*, 242 Or App 9, 21, 252 P3d 341 (2011); *Lynch*, 285 Or App at 244 (we are bound by the probate court's factual findings "if there is any evidence to support them"). The probate court appears to have relied entirely on an appraisal commissioned by the PR and the parties' representations of what the appraisal showed to determine the fair market value. The appraisal

---

[3] The PR does not request plain-error review, and we thus decline to exercise our discretion to do so.

partitioned the property into three parcels that would comply with the zoning requirements: (1) 40 acres, composed of approximately 17 acres of upland pasture and 23 acres of wetlands; (2) 40 acres, composed of a mix of level pasture and hillside land; and (3) 44.25 acres, composed of approximately 27.25 acres of upland pasture and 17 acres of pasture with low-quality soils.

The probate court concluded that because the will did not specify which acres were to go to which beneficiary, but it directed that all 36 remainder acres be used for "mitigation for wet land bartering," the court would value the 36 remainder acres as wetlands. At trial, the PR argued that the court's valuation was incorrect because the appraisal showed that the property contained only 23 acres of wetlands.

We agree with the PR. There is no evidence in the record that all 36 acres were wetlands, nor that using the acres for "mitigation for wet land bartering" necessarily means that all of the acres are wetlands. The appraisal showed only 23 acres of wetlands. Therefore, under our standard of review, there is no evidence to support the probate court's determination that all 36 remainder acres should be valued as wetlands. Thus, we reverse and remand for the probate court to recalculate the fair market value of the remainder of approximately 36 acres.[4]

Finally, the PR argues that the trial court erred by awarding attorney fees and costs to petitioners under the "common fund doctrine." We review for abuse of discretion a probate court's determination of attorney fees to be allowed

---

[4] Our analysis of the fair market value issue raised an additional concern regarding the value of the property. Both parties, and the probate court, appear to have identified the $1,000 to $4,000 "adjustment" value in the appraisal as providing the total value of each individual acre. However, an "adjustment" is the difference in value between the subject property and comparable properties based on the differences in characteristics as determined by an appraiser using the sales comparison approach, as in this case. *See Clark v. Washington Cnty. Assessor*, TC-MD 160101R, WL 1026305 at *2 (Or Tax M Div, Mar 16, 2017) (using the sales comparison approach, the appraiser "made adjustments for a variety of differences to the subject property that he deemed relevant for estimating its value" and the appraisal report "adjusted the price by $2,800 for the sale date, $20,000 for the location, $1,750 for the site, $24,180 for the gross living area, subtracted $6,000 for a one-car garage, and arrived at an adjusted sales price of $321,730").

out of the funds of an estate. *Tilton v. Lee*, 255 Or App 244, 249-50, 298 P3d 559, *rev den*, 353 Or 868 (2013). "However, the proper exercise of discretion may be predicated on the trial court's determinations of questions of law or fact—and those determinations, in turn, may implicate independent standards of review." *Callen and Callen*, 307 Or App 714, 718, 479 P3d 313 (2020) (internal quotation marks omitted).

Because we remand for the probate court to recalculate the fair market value of the remainder property, depending on the outcome of that decision, it may also wish to reconsider its attorney fee award. Accordingly, we do not reach the PR's argument at this time.

Reversed and remanded as to the $36,250 award for the acreage referenced in Article 3.39.3 of the fourth codicil; attorney fee award vacated and remanded; otherwise affirmed.