Argued and submitted July 9, 2014, affirmed March 25, 2015

## GRANTS PASS IMAGING & DIAGNOSTIC CENTER, LLC,
*Plaintiff,*
*and*

## David OEHLING,
an individual,
and Yung Kho, an individual,
*Plaintiffs-Appellants,*

*v.*

## Carlos MARCHINI, M.D.,
*Defendant-Respondent.*

Josephine County Circuit Court
07CV0860CM; A152437

346 P3d 644

Michael J. Mayerle argued the cause for appellants. With him on the briefs was Hornecker, Cowling, Hassen & Heysell, L.L.P.

Jay W. Beattie argued the cause for respondent. With him on the brief was Lindsay Hart, LLP.

Before Armstrong, Presiding Judge, and Egan, Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

**DE MUNIZ, S. J.**

Plaintiffs appeal from a judgment for defendant in which the trial court concluded that the term "member," as used in an LLC Operating Agreement (agreement), was not ambiguous and means only an active or current member of the LLC, not a former member. We agree with the trial court that the term "member" in the agreement is not ambiguous, and conclude that the trial court did not err in granting judgment for defendant. Accordingly, we affirm.

In August 2000, a group of Grants Pass physicians formed Grants Pass Imaging & Diagnostic Center, LLC (GPIDC). The intent of the organization was to provide diagnostic testing services to patients in Josephine and Jackson County, Oregon. Three planning meetings were held to develop a GPIDC operating agreement. During the GPIDC planning meetings, at least two of which defendant attended, the potential members of GPIDC discussed whether a restrictive covenant should be included within the operating agreement to protect member investments by restricting competition by former members in Jackson and Josephine Counties (the only counties in which GPIDC operated). The potential members discussed various forms of post-withdrawal noncompete provisions, which included durations from two to 10 years.

GPIDC retained a law firm to draft the agreement, which became effective on January 1, 2001. Paragraph 1.8 of the agreement, containing the restrictive covenant, however, had been copied from an operating agreement originally drafted for another company, and provided only that, "[e]ach member shall * * * refrain from competing with the Company within Douglas County, Oregon, without the consent of all the members after full disclosure of all material facts." GPIDC members noticed that error and corrected it in early 2004 by executing the First Amendment to the agreement, replacing "Douglas County" with "Josephine County and Jackson County." The members made no other modifications to paragraph 1.8. That provision of the agreement now states:

"1.8   Other Business of Members.   Each member shall (i) account to the Company and hold for the Company

any property, profit or benefit derived by the member in the conduct and winding up of the Company's business or derived from a use by the member of any Company property, including appropriation of a Company opportunity; and (ii) refrain from competing with the Company within Josephine County and Jackson County, Oregon, without the consent of all members after full disclosure of all material facts. Each member hereby acknowledges and agrees that a member's ownership of or other participation in the conduct of any business shall not be considered to be in competition with the Company if the business is not conducted within Josephine and Jackson County, Oregon."

In 2004 or 2005, defendant began constructing a sleep laboratory. After GPIDC verified defendant's construction of, and intent to operate the laboratory, GPIDC informed defendant that its operation would violate the agreement. Defendant then withdrew from GPIDC and began to operate the sleep laboratory. For a short period of time after defendant withdrew from GPIDC, GPIDC referred patients to defendant, because he was the only doctor in the area that could interpret certain sleep studies.

Eventually, plaintiffs filed an action against defendant alleging claims for (1) breach of fiduciary duty, (2) breach of contract, and (3) breach of the implied covenant of good faith and fair dealing. All plaintiffs' claims were based on defendant's construction and operation of a sleep laboratory in Josephine County, allegedly in violation of the agreement.

A Josephine County circuit court judge was originally assigned GPIDC's civil action. In November 2009, defendant moved for summary judgment on his counterclaim for a declaratory judgment, arguing that the noncompete provision did not apply to him because he was a former member when he operated the laboratory. In a letter opinion, the court denied defendant's motion for summary judgment, stating "[c]learly this provision applies to former members." Following that ruling, GPIDC moved for partial summary judgment, seeking an order from the court that the noncompete provision was unambiguous and applied to both current and former members. The court granted that motion, relying for the most part on extrinsic evidence related to the original formation of the agreement.

Subsequently, defendant's counsel informed the court that defendant would call another Josephine County circuit court judge as a witness in the action. That led to the recusal of all Josephine County judges. A Jackson County circuit court judge was then assigned to the case.

Following that assignment, defendant moved for reconsideration of his summary judgment motion. The court granted defendant's summary judgment motion, concluding that the noncompete provision in the agreement did not apply to defendant because defendant was a former member. The court reasoned that the term "member" in the agreement was unambiguous, included only current or active members of GPIDC, and that plaintiffs' interpretation required the court to insert into the agreement an omitted term—former.

Defendant then moved for judgment on the pleadings on plaintiffs' claims for breach of fiduciary duty and breach of the implied duty of good faith and fair dealing. The court granted defendant's motion reasoning that, because paragraph 1.8 of the agreement was not a post-contract covenant, plaintiffs' recovery was limited to actions taken while defendant was an active member, for which there was no evidence in the record.

Plaintiffs assign three errors on appeal: (1) the trial court erred in granting summary judgment on defendant's declaratory judgment counterclaim; (2) the trial court erred in applying a two-year tort statute of limitations in granting defendant's motion for summary judgment on plaintiffs' breach of fiduciary duty claim; and (3) the trial court erred in granting defendant's motion for judgment on the pleadings on plaintiffs' claim for breach of the implied duty of good faith and fair dealing.

On appeal, the parties renew several of the arguments they made to the trial court. Each party claims that the term "member" in the agreement is unambiguous, requiring judgment in their favor as a matter of law. Plaintiffs argue that the term "member" includes former members, as explained through extrinsic evidence, and therefore, defendant violated the noncompete provision in the agreement. Alternatively, plaintiffs argue that the use of

the term "member" is inconsistent within the agreement, and the trial court erred in concluding that the term is not ambiguous.[1] Defendant argues that the trial court properly interpreted the term "member" to include only active or current members of GPIDC, and to reason otherwise would require the court to insert into the agreement an omitted term.

In a contract action, a party is entitled to summary judgment only if the terms of a contract are unambiguous. *Milne v. Milne Construction Co.*, 207 Or App 382, 388, 142 P3d 475, *rev den*, 342 Or 253 (2006). "The court shall grant the [summary judgment] motion if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." ORCP 47 C. On appeal, we review the record in the light most favorable to the nonmoving party. *Id.*; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). We consider the facts and draw all reasonable inferences in favor of the nonmoving party, the plaintiffs here, to determine whether an "objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C; *see also Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004).

Whether the terms of an agreement are ambiguous is a question of law. *Abercrombie v. Hayden Corp.*, 320 Or 279, 292, 883 P2d 845 (1994) (citing *Evenson Masonry, Inc. v. Eldred*, 273 Or 770, 772, 543 P2d 663 (1975)). "Words or terms of a contract are ambiguous when they reasonably can, in context, be given more than one meaning." *Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 348, 876 P2d 761 (1994). To ascertain whether a provision within a contract is ambiguous, the court first looks at the text of the agreement in the context of the document as a whole. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). "In the construction of an instrument, the office of the judge

---

[1] We reject without further comment plaintiffs' argument that, as a matter of law, the term "member" in the agreement must be ambiguous because two trial judges disagreed about the term's meaning.

is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted[.]" ORS 42.230. "In determining whether a contract is ambiguous, parol evidence is admissible to explain the circumstances under which it was made. Although the evidence may not vary the terms of the written agreement, it can place the judge 'in the position of those whose language is being interpreted.'" *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den*, 299 Or 314 (1985) (citations omitted); *see also* ORS 42.220; *Abercrombie*, 320 Or at 292; *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006) (upholding the continued application of *Abercrombie*, allowing the court to consider the circumstances underlying the formation of a contract as part of the text in context analysis). The extrinsic evidence that the court may consider is limited to the circumstances under which the agreement was made. *City of Eugene v. Monaco*, 171 Or App 681, 687, 17 P3d 544 (2000), *rev den*, 332 Or 240 (2001) (interpreting *Abercrombie* and ORS 42.220).

As noted above, plaintiffs contend on appeal that the term "member" is unambiguous and that, properly interpreted, includes both current *and* former members of the LLC. That interpretation, plaintiffs argue, is consistent with the intentions of the founding members of GPIDC to create a restrictive covenant preventing former members from competing within Jackson and Josephine Counties.

We begin with the text and context of the agreement, along with the circumstances surrounding its formation. Paragraph 1.8 of the agreement provides that "[e]ach *member* shall \*\*\* refrain from competing with [GPIDC] within Josephine County and Jackson County, Oregon." (Emphasis added.) Although the disputed term, "member," is found throughout the agreement, neither the original agreement nor the amended agreement define it. Thus, we turn first to the term's ordinary meaning. ORS 42.250. The relevant meanings of the term "member" include:

"[O]ne of the individuals composing a society, community, association, or other group: as **a** (1) **:** a person who has been admitted usu[ally] formally to the responsibilities and

privileges of some association or joint enterprise * * * (2) : a person who has been admitted usu[ally] formally into some social or professional society typically requiring payment of dues, adherence to a program, or compliance with some other requirements of membership * * * **f** : one of the persons composing a territorial, kinship, or sociological unit * * * **4** : a constituent part of a whole * * * something belonging to a class or category."

*Webster's Third New Int'l Dictionary* 1408 (unabridged ed 2002) (boldface in original).

GPIDC was organized under Oregon's Limited Liability Companies Act, codified in ORS chapter 63, which defines "member" as

"a person or persons with both an ownership interest in a limited liability company and all the rights and obligations of a member specified under this chapter. 'Member' does not include an assignee of an ownership interest who has not also acquired the voting and other rights appurtenant to membership."

ORS 63.001(21).

Under that statutory definition, a "member" must have both "an ownership interest" and additional rights and obligations granted under ORS chapter 63. Although the statutory definition is helpful to determine the meaning of the term, we analyze the text of the disputed provision using the broadest meaning of the term "member" in the context of the entire Agreement.

The first sentence of paragraph 1.8 of the agreement is a compound-complex sentence, containing a dependent clause, "[e]ach member shall," and two independent clauses:

"(i) account to [GPIDC] and hold for the Company any property, profit or benefit derived by the member in the conduct and winding up of the Company's business or derived from a use by the member of any Company property, including appropriation of a Company opportunity; and (ii) refrain from competing with [GPIDC] within Josephine County and Jackson County, Oregon, without the consent of all the members after full disclosure of all material facts."

Thus, paragraph 1.8(i) limits the "appropriation of ∗∗∗ Company opportunit[ies]" and paragraph 1.8(ii) restricts competition with GPIDC.

Plaintiffs contend that paragraph 1.8(ii)—restricting competition with GPIDC—was intended to serve as a post-contract noncompetition clause, which requires that the term "member," as used in the dependent clause, include both current and former members. In other words, plaintiffs read paragraph 1.8(ii) as if it stated:

> "[e]ach [*current or former*] member shall ∗∗∗ refrain from competing with [GPIDC] within Josephine County and Jackson County, Oregon, without the consent of all the [*current*] members ∗∗∗."

Thus, according to plaintiffs, the parties intended one meaning for the term "member" in the dependent clause and a different meaning for the term "member" as used in the second independent clause.

We disagree. Plaintiffs' construction is at odds with the use of the term "member" throughout the remainder of the agreement. That is, the agreement distinguishes between a "member," "additional member," and "dissociated member." For example, paragraph 2.2 of the agreement defines "additional member" as

> "a member ∗∗∗ who has acquired Units from the Company. Unless the members unanimously agree otherwise, no person shall become an additional [member] unless the person is at that time an actively practicing, licensed physician[.]"

Further, paragraph 2.2.2 states, in part:

> "The members may, at the time an additional member is admitted, close the Company's books ∗∗∗ or make pro rata allocations of loss, income and expense deductions to an additional member ∗∗∗."

The uses of the term "member" as set forth in paragraph 2.2 of the agreement are not plausible if the term member includes *former* members.

Furthermore, paragraph 9 distinguishes between a "member" and a "dissociated member." For example, paragraph 9.7 uses the term "former member," stating:

"A member shall cease to be a member as of the date of death or the occurrence of the event of dissociation triggering the election by the Company or remaining members to purchase the affected member's Units pursuant to paragraph 9.3 or 9.4. During the period in which payments are being made to the *former member,* the *former member* shall have no rights as a member in the Company."

(Emphases added.)[2]

Although the text of paragraph 1.8, considered in the context of the entire agreement, seems to support only one plausible interpretation of the term "member"—an active or current member of the LLC—case law does not foreclose the use of extrinsic evidence to determine whether a contractual term is ambiguous. *See Abercrombie,* 320 Or at 292 ("The trial court may consider parol and other extrinsic evidence to determine whether the terms of an agreement are ambiguous. ORS 42.220."). The circumstances underlying the formation of the contract may be analyzed as part of the text in context rationale to determine whether an ambiguity exists. *Id.* at 291-92 (interpreting ORS 41.740[3] and ORS 42.220[4]). We have previously held that "precontract negoti-

---

[2] That provision in the agreement is comparable to ORS 63.265(1), which provides that a member that has withdrawn from an LLC is no longer considered a member:

"Except as otherwise provided in the articles of organization or any operating agreement: (1) A member shall cease to be a member in a limited liability company upon the member's death, incompetency, bankruptcy, dissolution, withdrawal, expulsion or assignment of the member's entire membership interest."

[3] ORS 41.740, the codification of Oregon's parol evidence rule, provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."

[4] ORS 42.220 states, "In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

ations constitute circumstances underlying the formation of [a] contract under ORS 42.220." *Batzer Construction, Inc.*, 204 Or App at 320-21 (citing *Anderson v. DiVito*, 138 Or App 272, 279, 908 P2d 315 (1995)).

Plaintiffs rely on statements made during several planning meetings, arguing that those statements establish that the unambiguous meaning of the term "member" under paragraph 1.8 includes both current and former members. Plaintiffs' proffered extrinsic evidence indicates that the intent of at least one of the founding members of GPIDC to restrict withdrawn members from competing with GPIDC. However, the evidence shows that discussions at the planning meetings regarding the specific scope of any post-withdrawal, non-competition provision included varying durations, none of which was included in any draft or the signed agreement. There is no indication that the meaning of the term "member" was ever discussed. Consequently, the extrinsic evidence proffered by plaintiffs does not aid in establishing the meaning of the term.

Plaintiffs further contend that an interpretation of "member," that only includes current members, violates ORS 42.230, which requires "such construction * * *, if possible, to be adopted as will give effect to all [contractual provisions]." Plaintiffs argue that paragraph 1.8(i)—limiting appropriation of company opportunities—acts in the same fashion as paragraph 1.8(ii)—which restricts competition with GPIDC. We disagree. Paragraph 1.8(i) mirrors ORS 63.155(2)(a) and paragraph 1.8(ii) mirrors ORS 63.155(2)(c).[5] In the LLC statutory scheme, the legislature

---

[5] ORS 63.155(2) provides, in part:

"A member's duty of loyalty to a member-managed limited liability company and its other members includes the following:

"(a) To account to the limited liability company and hold for it any property, profit or benefit derived by the member in the conduct and winding up of the limited liability company's business or derived from a use by the member of limited liability company property, including the appropriation of a limited liability company opportunity;

"* * * * *

"(c) To refrain from competing with the limited liability company in the conduct of the business of the limited liability company before the dissolution of the limited liability company."

has unmistakably differentiated between competition with an LLC and appropriation of an LLC opportunity. Because the agreement's language mirrors the statutory scheme, plaintiff's argument does not withstand scrutiny.

Alternatively, plaintiffs contend that the term "member," in paragraph 1.8, is ambiguous. Plaintiffs assert that the term "member" must include former members under paragraph 5.3 of the agreement, creating an internal inconsistency that would require the court to conclude that the term is ambiguous. We agree that, "[i]f a contract's provisions are internally inconsistent regarding a subject, then the contract is ambiguous regarding that subject." *Adair Homes, Inc. v. Dunn Carney*, 262 Or App 273, 278, 325 P3d 49, *rev den*, 355 Or 879 (2014) (citing *Madson v. Oregon Conf. of Seventh-Day Adventists*, 209 Or App 380, 384, 149 P3d 217 (2006)). As we explain below, we conclude that paragraph 5.3 creates no internal inconsistency.

Paragraph 5.3 of the agreement requires GPIDC to furnish "a statement suitable for use in the preparation of the member's income tax return" within 90 days of the end of the fiscal year. Simply stated, paragraph 5.3 of the agreement reflects the external legal obligation of all business entities to provide tax statements to owners and employees. *See, e.g.*, 26 USC § 6031(b) (partnership obligated to provide tax statement to any person who was a partner during the relevant tax year). Paragraph 5.3 does not affect the meaning of "member" as used in the agreement, nor does it create an internal inconsistency that would render that term ambiguous.

The specific context of the term "member" within paragraph 1.8 and the other provisions in the agreement allow for only one reasonable interpretation of the term "member," that is a current, or active, member. We conclude that the trial court did not err in concluding as a matter of law that the contractual term "member" is unambiguous and that the agreement's noncompete provision did not apply to defendant as a former member of GPIDC.

We turn to plaintiffs' second assignment of error, in which they argue that the trial court erred in applying the two-year tort statute of limitations (ORS 12.110) instead of

the six-year contract statute of limitations (ORS 12.080) to plaintiffs' breach of fiduciary duty claim. However, as we have just concluded, the term "member" in the agreement limits fiduciary duties to only current, or active, GPIDC members. Plaintiffs conceded below that there was no evidence in the record to support a breach of contract claim before defendant's withdrawal from GPIDC. Plaintiffs argued that the breach of contract claim was "intrinsic[al]ly linked" to the breach of fiduciary duty claim, conceding that a determination that the contract did not apply to former members was "dispositive to the determination of" plaintiffs' breach of fiduciary duty claim. Accordingly, plaintiffs' admission forecloses any breach of fiduciary duty claim because the contractual duties did not survive defendant's withdrawal from GPIDC.

Finally, we address plaintiffs' third assignment of error, that the trial court erred in granting defendant's motion for judgment on the pleadings regarding plaintiffs' claim for breach of the implied duty of good faith and fair dealing. Plaintiffs contend that if the noncompete provision applies to both current and former members, then defendant breached the implied covenant of good faith and fair dealing while he was a member, by preparing to compete against GPIDC.

"The law imposes a duty of good faith and fair dealing in contracts to facilitate performance and enforcement in a manner that is consistent with the terms of the contract and that effectuates the reasonable contractual expectations of the parties." *Whistler v. Hyder*, 129 Or App 344, 348, 879 P2d 214, *rev den*, 320 Or 453 (1994). Because the term "member," includes only current members and restricts only current members from competing with GPIDC, no obligation to refrain from competing with GPIDC extends beyond membership withdrawal. The implied duty of good faith and fair dealing may not be understood as modifying or inserting terms that are not present in the contract. *Safeco Ins. Co. v. Masood*, 264 Or App 173, 178, 330 P3d 61, *rev den*, 356 Or 638 (2014). There is nothing in the agreement that imposes on members a duty to refrain from preparation to compete. Further, as we have explained, the noncompetition provision under paragraph 1.8(ii) does not extend to former

members. Accordingly, defendant's actions could not support a claim for breach of the implied duty of good faith and fair dealing. The trial court did not err in granting defendant's motion for judgment on the pleadings.

Affirmed.