Argued and submitted March 5, 2015, reversed and remanded July 27,
petition for review allowed December 8, 2016 (360 Or 697)
See later issue Oregon Reports

GRAYDOG INTERNET, INC.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

David GILLER,
*Defendant-Respondent.*

David GILLER,
*Third-Party Plaintiff-Respondent,*

*v.*

Douglas WESTERVELT,
*Third-Party Defendant-Appellant.*

Multnomah County Circuit Court
130506470; A156539

381 P3d 903

Susan Marmaduke argued the cause for appellants. With
her on the opening brief were John C. Rake and Harrang

Long Gary Rudnick, P.C., and Robert J. McGaughey and Law Offices of Robert J. McGaughey. With her on the reply brief was Harrang Long Gary Rudnick, P.C.

Colin M. Murphy argued the cause for respondent. With him on the brief were Gary M. Bullock and Gary M. Bullock and Associates, P.C.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

**FLYNN, J.**

In this appeal, which arises out of a dispute between the minority and majority shareholder of a closely held corporation, we are called upon to construe the scope of ORS 60.952(6), a provision that allows closely held corporations to resolve certain shareholder claims through the mechanism of a forced buyout of the complaining shareholder's shares for fair value. The trial court granted a limited judgment declaring that the buyout election, which is available after "the filing of a proceeding under" ORS 60.952(1), does not apply to the third-party complaint filed by the minority shareholder, because that pleading did not commence an action and did not assert a claim of the type addressed in ORS 60.952(1). We conclude that the filing of the third-party complaint constitutes "the filing of a proceeding" for purposes of ORS 60.952(6). We also conclude that the real character of at least some of the third-party claims is a claim for oppression against the majority shareholder for purposes of ORS 60.952(1). Accordingly, we reverse the limited judgment and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Graydog Internet, Inc., founded in the mid-1990s, has two shareholders. Westervelt is the majority shareholder and Giller is the minority shareholder. In 2004, the parties signed a shareholder agreement that is at the heart of their current dispute. One provision of the agreement specifies that, if a shareholder's employment ends, the terminated shareholder shall be deemed to have offered to sell all of his shares to the corporation and the other shareholders.

In 2013, Graydog filed a complaint against Giller in circuit court seeking a declaration that Giller is an at-will employee and that it has a right to terminate Giller's employment. In his answer, Giller denied that he is an at-will employee, included counterclaims alleging that the shareholder agreement is unenforceable, and sought injunctive relief.

The following day, Giller also filed a third-party complaint against Westervelt, in which he incorporated the

allegations of his answer, affirmative defenses, and counter-claims against Graydog. The third-party complaint includes claims for (1) a declaration that the "shareholder agreement is void and unenforceable," (2) "breach of contract" based on Westervelt allegedly violating the corporate bylaws by "tak[ing] unilateral action in his personal capacity and for his personal interests," and (3) "breach of [the] contractual duty of good faith and fair dealing" based on Westervelt allegedly "having acted for the sole purpose of trying to force David Giller to unwillingly sell his shares to him."[1]

Graydog and Westervelt took the position that Giller's counterclaims and third-party complaint triggered the statutory buyout provision in ORS 60.952(6). Accordingly, Graydog elected, in writing and in the requisite timeframe, to purchase Giller's shares for $300,000. Giller responded by amending his answer to add a fifth counterclaim that sought a "declaratory judgment that ORS 60.952(6) does not apply to this suit." He then sought summary judgment on that counterclaim, and Graydog filed a cross-motion for partial summary judgment on the same issue.[2] Following a hearing, the court issued a letter opinion granting Giller's motion and denying Graydog's motion. The court then entered a limited judgment in which it incorporated its letter opinion and declared:

"1.   ORS 60.952(6) does not apply to this case because ORS 60.952(6) may be triggered only against one who commences an action, not against a party who files counter-claims or a third-party complaint.

"2.   ORS 60.952(6) does not apply to this case for the further reason that the claims made by Mr. Giller are not of the type described in ORS 60.952."

---

[1] ORCP 22 provides that a third-party complaint is brought against a person who may be liable "for all or part of the plaintiff's claim against the third party plaintiff." Neither Westervelt nor Graydog, however, challenged Giller's use of a third-party complaint to bring his claims against Westervelt.

[2] Giller also sought partial summary judgment on a sixth counterclaim against Graydog—that ORS 60.952(6) violates the Oregon and United States constitutions, but the trial court did not reach that issue, and the issue was not raised on appeal.

Graydog and Westervelt (jointly, "appellants")[3] appeal from the entry of that limited judgment, assigning error both to the trial court's granting of Giller's motion for partial summary judgment and its denial of Graydog's cross-motion for partial summary judgment.

## II. DISCUSSION

In this appeal from a judgment addressing cross-motions for summary judgment, in which appellants have assigned error to the trial court's rulings on both motions, both rulings are subject to review.[4] *Adair Homes, Inc. v. Dunn Carney*, 262 Or App 273, 276, 325 P3d 49, *rev den*, 355 Or 879 (2014). "We review the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Id.* (citing ORCP 47 C and *Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002)). As to the issues raised on appeal, the parties agree that there are no disputed issues of fact and that we should determine as a matter of law whether the buyout election of ORS 60.952(6) is available to Graydog.

Whether ORS 60.952(6) applies is a question of statutory construction that we resolve by applying the methodology articulated in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Under that methodology, we seek to determine the legislature's intent by examining the text and context of the statute, followed by consideration of the legislative history to the extent it "appears useful to the court's analysis." *Id.*

Until 2001, corporate dissolution—authorized under ORS 60.661—was the only statutory remedy to address claims of oppression or misconduct in closely held corporations.

---

[3] Although the summary judgment motions addressed Giller's counterclaim against Graydog, both Graydog and Westervelt filed notices of appeal from the limited judgment. Giller does not suggest that Westervelt is not a proper party on appeal.

[4] Given that authority, we reject without further discussion Giller's contention that appeal from the "Limited Judgment Granting Declaratory Relief in favor of Defendant/Third-Party Plaintiff David Giller" was insufficient to put at issue the denial of Graydog's cross-motion for summary judgment on the same claim for relief.

*Hickey v. Hickey*, 269 Or App 258, 268-69, 344 P3d 512, *rev den*, 357 Or 415 (2015). The legislature addressed that perceived problem by asking an Oregon State Bar task force to draft the bill that became ORS 60.952. In testimony before the House subcommittee that approved the bill, the chair of the task force emphasized that dissolution of the corporation by judicial order was "'typically the worst remedy available, both for the plaintiff and the corporation and for the economy'" and that the proposed legislation would codify alternative remedies that Oregon courts were already granting. *Hickey*, 269 Or App at 269 (quoting Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, SB 118, May 2, 2001, Tape 89, Side A (statement of Robert Art)).

ORS 60.952(1) provides in material part that

"[i]n a proceeding by a shareholder in a [closely held] corporation[5] * * * the circuit court may order one or more of the remedies listed in subsection (2) of this section if it is established that:

"(a)   The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock and irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock;

"(b)   The directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent;

"(c)   The shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired; or

"(d)   The corporate assets are being misapplied or wasted."

---

[5] By its terms, ORS 60.952(1) applies to "a shareholder in a corporation that does not have shares that are listed on a national securities exchange or that are regularly traded in a market maintained by one or more members of a national or affiliated securities association."

Subsection (2) contains a long list of specific remedies that "include but are not limited to" various types of equitable relief to alter the corporate structure or operations, "[t]he award of damages to any aggrieved party," and a corporate buyout "of all of the shares of one or more other shareholders for their fair value." ORS 60.952(2)(a) - (m). Subsection (5) specifies considerations and a procedure for the trial court to follow if it orders the remedy of share purchase for value.

We have described the remedy of a "court-ordered share purchase for fair value" as "Oregon courts' preferred remedy for oppression in closely held corporations." *Hickey*, 269 Or App at 268. The legislative history of ORS 60.952 suggests that the bill was designed to encourage courts to use that remedy. *Id.* at 269 (quoting Testimony, Senate Committee on Business, Labor and Economic Development, SB 116, Jan 15, 2001 (later incorporated into SB 118), Tape 2, Side A (statement of Robert Art)).

In addition, ORS 60.952(6)—the provision at issue here—allows "the corporation or one or more shareholders" to resolve the litigation by "elect[ing] to purchase all of the shares owned by the shareholder who filed the proceeding for their fair value." In the event of that election, the parties are allowed 30 days to "reach agreement as to the fair value," or, if they are unable to reach an agreement, "the court, upon application of any party, shall stay the proceeding under subsection (1) of this section and shall *** determine the fair value and terms of purchase of the shares of the shareholder who filed the proceeding." ORS 60.952(6)(e), (f). The legislative history suggests—as does the text—that ORS 60.952(6) "'provides a means to bring the litigation to an early end'" by providing that "'[a]ny of the defendants or the corporation can make an offer at an early stage of the litigation to buy the shares of the aggrieved shareholder.'" *Hickey*, 269 Or App at 270 n 6 (quoting Tape Recording, Senate Committee on Business, Labor and Economic Development, SB 116, Jan 15, 2001 (later incorporated into SB 118), Tape 2, Side A (statement of Robert Art)).

If the parties cannot reach agreement as to the fair value, then the court is directed to "determine the fair value

and terms of purchase of the shares," using the procedure described in ORS 60.952(5). ORS 60.952(6)(f).

A. *The Meaning of "filing of a proceeding" Under ORS 60.952*

As described above, the trial court ruled that that ORS 60.952(6) cannot be used "against a party who files counterclaims or a third-party complaint." Appellants argue that the third-party complaint created a "proceeding" for purposes of triggering the shareholder buyout protection of ORS 60.952(6), regardless of the fact that Giller joined his claims to the existing circuit court action.[6] They argue that that interpretation is consistent with both the statutory language and intent of the legislature. We agree.

The pertinent text of ORS 60.952(6) provides that "the corporation or one or more shareholders may elect" to exercise the buyout option "after the filing of a proceeding under subsection (1)." The term "proceeding," as used in ORS chapter 60, means "a civil, criminal, administrative or investigatory action," and had that meaning at the time the legislature adopted ORS 60.952. *Former* ORS 60.001(17) (1999), *renumbered as* ORS 60.001(24) (2013). Although that definition does not directly answer the question presented, it suggests a legislative intent that the term "proceeding" be construed broadly. Moreover, the term "action," as used in Supreme Court case law prior to adoption of ORS 60.952, was broad enough to treat third-party complaints as a separate civil action. *See Wallulis v. Dymowski*, 323 Or 337, 342, 918 P2d 755 (1996) (using "third-party complaint" and "third-party action" synonymously); *O'Connell, Goyak & Ball v. Silbernagel*, 297 Or 207, 210, 681 P2d 1159 (1984) (describing a third-party complaint as a "separate action").

The structure of the statute also suggests that the legislature did not intend to limit the application of ORS 60.952(6) to claims brought by an aggrieved shareholder in an original complaint. First, nothing in the statutory text

---

[6] Appellants argued below that the counterclaims can also constitute the filing of a "proceeding," but on appeal they argue only that the third-party complaint triggered the buyout provision, taking the position that we need not decide the significance of a counterclaim.

conditions the court's authority to grant the relief authorized by ORS 60.952 on the filing of a claim for such relief in an original complaint. When a subsequent complaint adds or joins claims that are addressed by ORS 60.952, the case becomes, at least to the extent of those claims, "a proceeding" to which ORS 60.952(1) applies and, thus, "a proceeding under subsection (1)." And if the first-filed complaint did not allege claims addressed by ORS 60.952, then the *filing* of what has become a "proceeding under subsection (1)" can only be attributed to the filing of the subsequent complaint containing the claims that are addressed by ORS 60.952.

Finally, the statutory purpose convinces us that we must construe "the filing of a proceeding under subsection (1)" to include the filing of a new complaint alleging claims for relief under ORS 60.952(1), regardless of whether it is joined to an existing action. If Giller were correct that the "filing of a proceeding under subsection (1)" occurs only with the filing of an original complaint, then any subsequent complaint alleging claims under ORS 60.952(1)—whether filed in the original action by choice or otherwise—would have to be litigated without the benefit of the subsection (6) remedy. As appellants emphasize, such a rule would allow feuding shareholders to strategically undermine the legislature's desire to allow the early buyout election as an alternative to protracted litigation. At least under the circumstances here, in which Giller's third-party complaint introduced the claims that, appellants contend, fall within the scope of ORS 60.952(1), we conclude that the filing of a third-party complaint can constitute the "filing of a proceeding under subsection (1)," for purposes of ORS 60.952(6).

B. *A "proceeding under" ORS 60.952(1)*

We next consider appellants' arguments that Giller alleged the kind of claims against Westervelt that initiated a "proceeding under subsection (1)." As set out above, ORS 60.952 authorizes a range of equitable remedies or money damages for shareholders of close corporations when the shareholder "establishe[s] that * * * [t]he directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent." ORS 60.952(1)(b).

Appellants argue that Giller's third-party complaint initiated a proceeding under ORS 60.952(1) because it alleges that Westervelt engaged in what amounts to "oppressive" conduct within the meaning of ORS 60.952(1)(b) and seeks remedies that are the type specifically identified by ORS 60.952(2). Giller responds that he did not initiate a proceeding under ORS 60.952(1) because his third-party complaint alleges "contract" claims, while the "oppressive" conduct addressed by that statute equates to a breach of fiduciary duty, which is a tort claim.

We begin by emphasizing that the label assigned to a claim does not necessarily define its character. We recognize that Giller labeled his claims for relief "Breach of Contract" and "Breach of Contractual Duty of Good Faith and Fair Dealing," and that he pleaded those claims without using the term "oppression" or citing ORS 60.952. However, nothing in the statutory language suggests that the legislature intended the availability of the buyout election—or for that matter the availability of any remedy authorized by ORS 60.952—to depend on how the plaintiff labels the claims. Rather, ORS 60.952(6) applies to a "proceeding under" ORS 60.952(1), which—in turn—means a "proceeding by a shareholder" in which certain factual circumstances are "established."

In another context, we have emphasized that we will look past the label a party gives to a claim to determine whether the claim truly sounds in contract, and instead focus on "[t]he 'gravamen or the predominant characteristics' of an action, not the plaintiff's election." *Htaike v. Sein,* 269 Or App 284, 294, 344 P3d 527, *rev den,* 357 Or 565 (2015) (quoting *Lindemeier v. Walker,* 272 Or 682, 685, 538 P2d 1266 (1975)). *Htaike* discusses the rule that has long been applied in the context of determining whether a claim is subject to the contract or tort statute of limitations. *Id.* at 293-94. Because the length and application of the statute of limitations differ between tort and contract claims, the court seeks "to determine the statute of limitation appropriate to the 'real' character of the action rather than to leave this solely to the plaintiff's chosen statement of his cause of complaint." *Securities-Intermountain v. Sunset Fuel,* 289 Or

243, 252, 611 P2d 1158 (1980). We conclude that it is appropriate to place a similar emphasis on the "real" character of a claim when determining whether it constitutes a "proceeding under" ORS 60.952(1).

As we explained in *Htaike,* in general, "[t]o determine the predominant characteristics of an action, we examine the legal source of the defendant's liability, the factual setting of the dispute, the injuries asserted by the plaintiff, and the plaintiff's claimed measure of damages." 269 Or App at 294 (citing *Securities-Intermountain,* 289 Or at 258-60). Here, we consider the facts that Giller proposed to establish, the sources of Westervelt's liability on those facts and the relief that Giller sought. From those considerations, we determine that the real character of at least some of Giller's third-party claims is a claim for oppression under ORS 60.952(1).[7]

As an initial matter, we observe that the factual setting—a dispute between shareholders of a closely held corporation—is consistent with the scope of ORS 60.952. In addition, the remedies that Giller seeks—including $1.2 million in money damages to himself directly—is consistent with the relief that ORS 60.952 authorizes courts to grant if a majority shareholder engages in oppressive conduct. *See* ORS 60.952(2)(b) and (j); ORS 60.952(3).

We also conclude that the alleged bases for Westervelt's liability to Giller describe the oppressive conduct for which ORS 60.952(1) affords a remedy. As guidance for determining what the legislature intended by "oppressive" conduct, both sides point us to the Supreme Court's description of "oppressive conduct" in *Baker v. Commercial Body Builders,* 264 Or 614, 628-29, 507 P2d 387 (1973). The court held in *Baker* that "'oppressive' conduct by those in control of a 'close' corporation as its majority stockholders is closely related to what we agree to be the fiduciary duty of

---

[7] Although we borrow from the approach used to determine the real character of a claim for purposes of the statute of limitations, we do not suggest that our approach to deciding whether a claim initiates a "proceeding under" ORS 60.952(1) will necessarily be identical. The tests serve different functions, and significantly greater consequences flow from a determination of the real character of a claim for purposes of the statute of limitations—namely, a complete a bar to relief.

a good faith and fair dealing owed by them to its minority stockholders." *Id.* at 629 (footnote omitted). Similarly, we explained in *Naito v. Naito*, 178 Or App 1, 20-21, 35 P3d 1068 (2001), and in *Hickey* that, when conduct by majority or controlling shareholders in a closely held corporation violates their fiduciary duties, the conduct is likely to be considered "oppressive" conduct. *Hickey*, 269 Or App at 266 (citing *Naito*, 178 Or App at 20). We conclude that at least some of the allegations of Giller's third-party complaint state claims against Westervelt for breach of his fiduciary duties to Giller and, thus, for "oppression" under ORS 60.952(1).

### 1. *Giller's claim for "Breach of Contract"*

The real character of Giller's breach of contract claim is a proceeding for "oppressive" conduct under ORS 60.952, because he alleges the breach of duties to which Westervelt "would be bound independent of the contract." *See Securities-Intermountain*, 289 Or at 259 (explaining that that consideration can be an important indication that the "real" character of an action is not breach of contract.) The contract that Westervelt allegedly breached is the corporate bylaws. The breach that caused harm to Giller is alleged to consist of Westervelt "tak[ing] unilateral action in his personal capacity and for his personal interests that violate his contractual duties under the Bylaws."

We emphasized in *Naito* that

"the heart of a corporate fiduciary's duty is an attitude, not a rule. 'The fiduciary best fulfills its duties if it approaches them with the attitude of seeking the beneficiary's interests rather than the personal interests of the fiduciary [.]'"

178 Or App at 21 (quoting *Chiles v. Robertson*, 94 Or App 604, 619-20, 767 P2d 903, *adh'd to as modified on recons*, 96 Or App 658, 774 P2d 500, *rev den*, 308 Or 592 (1989)); *see also Noakes v. Schoenborn*, 116 Or App 464, 472, 841 P2d 682 (1992) ("When the majority shareholders of a closely held corporation use their control over the corporation to their own advantage and exclude the minority from the benefits of participating in the corporation, absent a legitimate business purpose, the actions constitute a breach of their fiduciary duties of loyalty, good faith and fair dealing.").

That is the conduct that Giller alleges as the basis for his third-party claims. Westervelt's alleged wrongful actions include: Westervelt loaned himself $20,000 from the company without the board's approval; Westervelt elected his wife to the board of directors over Giller's objection; Westervelt threatened to force Giller to sell his shares if Giller did not agree to do so voluntarily, and had an attorney prepare and file Graydog's complaint to terminate Giller's employment before the board of directors voted on the proposal. As emphasized, Giller alleges that Westervelt took all of those actions "for his personal interests" and harmed Giller as a result. It is Westervelt's fiduciary duty, not any provision of the bylaws, that prohibited him from taking action "for his personal interests" that was harmful to Giller. Thus, while some of those allegations may describe the breach of a contractual obligation created by the bylaws,[8] they also describe a breach of the fiduciary duties that Westervelt owes to Giller by virtue of his relationship as majority shareholder, independent of any obligation created by the corporate bylaws. Indeed, Giller's claim that Westervelt has caused harm specifically to Giller through that allegedly self-interested conduct describes a traditional direct shareholder action for breach of fiduciary duties. *See Noakes*, 116 Or App at 471 (stating that it is "well-recognized" that "minority shareholders may bring a direct action, rather than a derivative action, if they allege harm to themselves distinct from the harm to the corporation or a breach of a special duty owed by the defendant to the shareholders").[9]

2. *Giller's claim for "Breach of Contractual Duty of Good Faith and Fair Dealing"*

For reasons similar to those discussed above, we conclude that the gravamen of Giller's claim for breach of

___

[8] We recently described as "well-established legal principles that: (1) the bylaws of a corporation are a contract between the members of the corporation, and between the *corporation* and its members; and (2) directors, as agents of a corporation, ordinarily are not parties to the contracts of the corporation, *WSB Investments, LLC v. Pronghorn Devel. Co., LLC*, 269 Or App 342, 356, 344 P3d 548 (2015) (emphasis in original) (internal quotations and citations omitted).

[9] We have not yet addressed whether ORS 60.952, which governs proceedings "by a shareholder" encompasses a shareholder's derivative action on behalf of the corporation.

the duty of good faith and fair dealing is a breach of the noncontractual duty of the same name that gives rise to a claim for oppression. The implied contractual duty of good faith and fair dealing is tied to the terms of a contract. It is imposed "'to facilitate performance and enforcement in a manner that is consistent with the terms of the contract and that effectuates the reasonable contractual expectations of the parties' *** [but] may not be understood as modifying or inserting terms that are not present in the contract." *Grants Pass Imaging & Diagnostic Center v. Marchini*, 270 Or App 127, 139, 346 P3d 644 (2015) (quoting *Whistler v. Hyder*, 129 Or App 344, 348, 879 P2d 214, *rev den*, 320 Or 453 (1994)).

By contrast, Giller's claim does not allege any specific contract or contract terms that Westervelt failed to perform in good faith or contractual rights that he failed to enforce in good faith. Rather, he alleges that "Westervelt has a contractual duty of good faith and fair dealing in all of his dealings with his business associate, David Giller." He alleges that Westervelt breached that duty by "having acted on behalf of himself and for his own personal benefit alone, *** and having acted for the sole purpose of trying to force David Giller to unwillingly sell his shares to him." Those allegations describe a breach of the duty of good faith and fair dealing that Westervelt owed Giller by virtue of his relationship as director and majority shareholder and reveal the real character of the claim to constitute a claim for oppression under ORS 60.952(1).

C.  *Giller's Final Argument*

Giller argues that the practical effect of applying ORS 60.925(6) to plaintiff's claims will be precisely the "corporate squeeze-out" of Giller that Westervelt sought from the outset. Giller insists that, to avoid such an oppressive result, we must give allegedly oppressed shareholders the power to control whether their intra-corporate dispute can be resolved under ORS 60.952(6). Ultimately, however, as Giller recognizes, any danger that the buyout election will be used as a "weapon" against a minority shareholder comes from the statute itself. Giller argues that "ORS 60.952(6) is truly unique," emphasizing that a similar provision in the Model Business Corporation Act allows the buyout election

only against a shareholder who seeks to dissolve the corporation. *See* Model Business Corporation Act, § 14.34 (4th ed 2011). But the buyout provision in ORS 60.952(6) is the one that the legislature adopted. Giller's argument against Oregon's approach should be addressed to the legislature.[10]

## III. CONCLUSION

We conclude that the trial court erred in granting Giller's motion for summary judgment and in denying appellant's cross-motion on Giller's Fifth Counterclaim for a declaration "that ORS 60.952(6) does not apply to this suit."

Reversed and remanded.

---

[10] We also note that ORS 60.952 already includes a mechanism to address some of Giller's concerns about oppression by specifying that, absent agreement by the aggrieved shareholder as to fair value for the buyout, the trial court makes that determination, "taking into account any impact on the value of the shares resulting from the actions giving rise to a proceeding under subsection (1)." ORS 60.952(5)(a)(A).